JANET RADKUS, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 6958

December 2, 1974                    528 P.2d 697

*Morgan D. Harris,* Clark County Public Defender, and
*Robert L. Stott,* Deputy Public Defender, of Las Vegas, for
Appellant.

*Robert List,* Attorney General, of Carson City; *Roy A.
Woofter,* District Attorney, *Charles Garner,* Chief Deputy
District Attorney, and *Dan M. Seaton,* Deputy District Attor-
ney, Clark County, for Respondent.

# OPINION

By the Court, MOWBRAY, J.:

Janet Radkus, appellant, was arrested by Las Vegas police officers for the shooting-murder of her ex-husband. Witnesses identified Janet as the person they saw standing over the deceased at the scene of the shooting. Janet told the police that she threw the murder weapon into some bushes near the scene, but a search of the area did not produce a gun.

Soon after Janet was arrested, her son and her sister, both of whom lived out of town, learned of the shooting and traveled to Las Vegas. They stayed at Janet's house. Janet's son gained entrance to the house with a key that had been in his possession for many years. Janet's sister stayed in the house with Janet's express permission.

Approximately a week after arriving, Janet's sister was straightening the house and discovered a locked suitcase in Janet's bedroom. Knowing the combination, she opened the suitcase with the intention of packing some children's clothes. Inside, she discovered a gun. With the assistance of Janet's son, she called and requested the police to come to the house. When the police arrived, Janet's sister related her discovery of the gun. She then took the officers into the bedroom and showed them the gun in the suitcase. The officers took the gun and had certain tests conducted. Results of these tests and the gun were introduced at trial.

During trial, Janet called as witnesses two medical experts to support a defense of insanity. The State called a medical expert in rebuttal. Janet's counsel objected to this testimony

on the ground that the State's medical expert had not examined Janet. The objection was overruled, the trial judge stating that the objection went to the weight of the evidence, not the admissibility. The trial judge further stated that he felt the State's expert was in some respects better qualified to give an opinion than possibly the other medical experts, because he had the advantage of reviewing various statements made by the investigating officers and other witnesses, which Janet's two experts did not.

The jury returned a guilty verdict. Janet has appealed, alleging the trial judge erred (1) in admitting the gun and the tests into evidence and (2) by commenting on the qualifications of the State's medical expert.

1. *The Admissibility of the Gun and the Tests into Evidence.*

In the instant case, the circumstances leading to police custody of the gun do not establish a search and seizure within the prohibitions of the Fourth Amendment. See Purvis v. Wiseman, 298 F.Supp. 761 (1969). The Fourth Amendment simply does not apply where evidence is discovered and turned over to the government by private citizens. Burdeau v. McDowell, 256 U.S. 465 (1921); Coolidge v. New Hampshire, 403 U.S. 443, 487–490 (1971); Mears v. State, 190 N.W.2d 184 (Wis. 1971); People v. Cohn, 106 Cal.Rptr. 579 (1973).

Janet contends, however, that even if the discovery of the gun by her sister did not violate her Fourth Amendment rights, the entry by police officers into her house without a search warrant, and their subsequent seizure of the gun, did violate these rights. Janet argues that neither her sister nor her son could validly consent to this latter "search and seizure" by the officers. Assuming the police entry was a "search", police may validly search pursuant to the consent of a party having the apparent present right to use or occupy the area to be searched. Reeves v. Warden, 346 F.2d 915 (4th Cir. 1965). Here, Janet had previously informed the police that her sister had permission to stay at her home. The officers could reasonably and in good faith believe, therefore, that the sister had authority to consent to their entrance into the home. People v. Daniels, 93 Cal.Rptr. 628 (1971). The gun was displayed to the officers who in turn could validly seize what they had probable cause to believe was evidence in a crime. Further,

both Janet's son and her sister offered the gun to the officers. There was no violation of Janet's Fourth Amendment rights.

2. *The Trial Judge's Comments on the Qualifications of the State's Medical Expert.*

Janet urges that the trial judge committed reversible error when he stated his reasons for admitting the testimony of the State's medical expert. Ordinarily, the comments of the court in overruling objections to the admission of evidence do not constitute error. As this court said in State v. Fitch, 65 Nev. 668, 685, 200 P.2d 991, 1000 (1948):

". . . The fact that the comment is not addressed to the jury, nor intended for the jury, greatly reduces its asserted prejudicial effect. . . . [I]f it amounts to no more than a comment to counsel assigning a reason for a ruling and does not purport to invade the jury's right to pass on the facts, and is not unfair or prejudicial, there is no error. . . ."

We believe that is what occurred in the instant case. Additionally, the learned judge, in charging the jurors, admonished them that they and they alone were the sole judges of the credibility of the witnesses and the weight to be given their testimony.

Finding no error, we affirm the judgment of conviction.

THOMPSON, C. J., and GUNDERSON, BATJER, and ZENOFF, JJ., concur.